The undersigned, parties to a question in difference, which might be the subject of a civil action, agree upon the following statement of facts upon which the controversy depends, and submit the same to the judge of the Superior Court of WAKE which would have jurisdiction if an action had been brought:
1. The plaintiff is a citizen of North Carolina, residing in Chowan County, and the defendant is the Secretary of State of North Carolina.
2. That on 17 April, 1890, the plaintiff filed in the office of the defendant, in the city of Raleigh, certain entries of land and certificates, plats, etc., copies of which are hereto attached, and upon them demanded of the defendant that he issue to plaintiff grants for the lands described in said entries, according to law.
3. That the defendant, on or about 3 April, received from M. F. (731) and H. A. Bond, Jr., a certain communication, a copy whereof is hereto attached, and also copies of certain extracts from the proceedings of the board of councilmen of the town of Edenton, copies of which are hereto attached, and thereupon his note to plaintiff, a copy of which letter is hereto attached.
4. That the defendant refused, and still refuses, to issue to the plaintiff grants for the lands described in said entries.
Upon the foregoing statement of facts, the following question is submitted to the court:
Is it the duty of the defendant to issue the grants demanded by the plaintiff?
If the court shall be of opinion that it is the duty of the defendant to issue the grants demanded by the plaintiff, then judgment is to be entered in favor of the plaintiff, requiring the defendant to issue the said grants, and for the costs of the action.
If the court shall be of opinion that it is not the duty of the defendant to issue the said grants, then judgment is to be entered in favor of the defendant, and against the plaintiff for costs.
To the Entry Taker of Chowan County:
The undersigned, Jacob Wool, a resident of Chowan County and a citizen of the State of North Carolina, makes an entry of the following described and unappropriated lands to such marks and lines on deep water and at the channel as may have been heretofore indicated by the board of councilmen of the town of Edenton: In front of said Wool's, *Page 510 
John M. Jones's lot, bounded on the north by Blount Street, on the east by lot No. 187, south by the creek and arm of Edenton Bay, and on the west by lot of D. W. Roper, containing .... acre, more or less, (732) to wit, the lands covered by water in front of the lands of said Wool above described, running south out from the said front of said Wool's lot to deep water at the channel in lines parallel and confined to straight lines, including only the said water-front, and the lands covered by water within the said lines to deep water at the channel.
This entry is made for the purpose of erecting a wharf, and other purposes incident thereto.
Witness his the said Jacob Wool's hand and seal, this 7 April, 1890.
 his JACOB X. WOOL. [Seal.] mark. Witness: WM. J. LEARY, JR.
REPORT OF SURVEYOR.
I, Patrick Matthews, a surveyor, appointed special surveyor on 7 April, 1890, by the board of commissioners of Chowan County, to survey the lands covered by the entry of Jacob Wool, No. 38, entered on 7 April, 1890, do hereby certify that in obedience to the warrant of survey, did, on the 10th day of April, 1890, after duly administering to the chain-carriers the following oath, to wit: "That we, and each of us, do solemnly swear that we will measure justly and truly the lands which are about to be measured and deliver a true account of the same to the surveyor, the said Patrick Matthews, and otherwise to perform our duties as said chain-carriers according to law: so help us God," proceed to make the said survey of said lands and water-front covered by the entry No. 38 of said Jacob Wool, and did, according to law, survey the said land and water-front so entered, two plats of which, showing the beginning, angles, etc., etc., are hereto attached, bounded and described as follows, to wit, the land covered by water in front of Jacob Wool's lot on Blount (733) Street, in the town of Edenton, county of Chowan, and State of North Carolina, bounded on the north by the said Blount Street, east by the ice-house lot of H. A. Bond, south by creek, and on the west by the Page or D. W. Roper lot; beginning at "A" on the plat on the Roper line, thence with high-water mark to "B" in the line of the ice-house lot, thence south 17 1-2 west 325 feet to point "C" in the plat, thence with the line of deep water to point "D" in the plat, thence north 17 1-2 east 240 feet to the beginning, containing 74 yards.
In witness of which I, Patrick Matthews, special surveyor, have hereunto set my hand and seal, this 14 April, 1890.
 PAT. MATTHEWS, [Seal.] Special Surveyor. *Page 511 
To the Entry Taker of Chowan County:
The undersigned, Jacob Wool, a resident of Chowan County and a citizen of North Carolina, makes an entry of the following described vacant and unappropriated land, to wit:
The land covered by water in front of Jacob Wool's woodyard wharf in the town of Edenton, running out from the foot of said wharf south between lines parallel and distant one from the other sixty-four and one-half feet, so far as the channel, a distance of one hundred and forty-five feet, containing . . . . acre.
This entry is made for the purpose of erecting a wharf, and other purposes incident thereto.
Witness his hand and seal, this 7 April, 1890.
 his JACOB X. WOOL. [Seal.] mark Witness: WM. J. LEARY, JR.
REPORT OF SURVEYOR. (734)
I, Patrick Matthews, a surveyor, appointed on 7 April, 1890, by the board of commissioners of Chowan County to survey the lands covered by the entry of Jacob Wool, No. 39, entered on 7 April, 1890, after duly administering to the chain-carriers the following oath, to wit: "That we, and each of us, do solemnly swear that we will measure justly and truly the lands which are about to be surveyed, and deliver a true account of the same to the surveyor, said Patrick Matthews, and otherwise to perform our duties as said chain-carriers according to law: so help us, God," proceeded to make the survey of said land and water-front covered by the entry (No. 39) of said Jacob Wool, and did, according to law, survey the said land and water-front so entered, two plats of which, showing the beginning, angles, etc., are hereto attached, bounded and described as follows, to wit: The land covered by water in front of Jacob Wool's wood-yard lot, in the town of Edenton, county of Chowan, and State of North Carolina, adjoining the lot of E. M. W. Moon, M. H. Dixon and others, beginning at point "A" on the plat; thence S. 74 1-2 E. 64 feet, 3 inches, to point "B" on the plat; thence S. 8 W. 145 feet to "C"; thence N. 74 1-2 W. 64 feet, 3 inches; thence N. 8 E. 145 feet to the beginning, containing 74 poles.
In witness whereof, I, Patrick Matthews, special surveyor as aforesaid, have hereunto set my hand and seal, this 14 April, 1890.
 PAT. MATTHEWS, [Seal.] Special Surveyor. *Page 512 
JUDGMENT.
This controversy, submitted without action, coming on to be tried this 24 October, 1890, upon the statement of facts agreed, after consideration of the same, it is ordered and adjudged that the (735) defendant William L. Saunders, Secretary of State, cause to be duly issued to the plaintiff the grants for the real estate described in the pleadings, according to law, and that a writ of mandamus issue accordingly.
It is further adjudged that the plaintiff recover of the defendant the costs of this action, to be taxed by the clerk.
Two questions must be determined before we enter upon the consideration of the facts of this particular case.
1. Whether the Secretary of State has a right to receive and act upon testimony outside of the papers filed by a claimant for the purpose of obtaining a grant for vacant and unappropriated land belonging to the State?
We are of the opinion that the question must be answered in the negative. The law has carefully prescribed how vacant lands may be entered and in what cases the Secretary of State may issue grants. Chapter 17, vol. 2 of The Code. The entry takers and surveyors of the several counties are sworn officers charged with important duties in respect to the subject, and if it appears from the warrant and survey that they have discharged these duties, and if the claimant has in all other respects complied with the law, the Secretary has no discretion and must issue the grant. To permit or require the Secretary to go behind the prima facie
right of the claimant and determine whether the land is subject to entry, would necessarily involve an inquiry into the legal or equitable rights of other parties claiming under prior entries or grants, or by adverse possession, and thus a new tribunal, unknown to the Constitution and laws, would be erected for the investigation of titles to real estate, the practical workings of which would be productive of (736) inestimable conflict, uncertainty and confusion.
The trial of such questions is wisely left to the courts after the grant is issued, the grant being voidable if irregularly issued, and void if the land is not subject to entry. Strother v. Cathey, 5 N.C. 102;Harshaw v. Taylor, 48 N.C. 514; S. v. Bevers, 86 N.C. 591; Brem v.Houck, 101 N.C. 627. *Page 513 
2. The second question is, whether the Secretary of State may refuse to issue a grant when upon the face of the claimant's papers (that is, the warrant and survey) it clearly appears that the land is not subject to entry, or subject to entry only upon certain conditions which are not shown to exist.
The power of the Secretary as to issuing grants is a limited one, and extends only to those lands which by statute are subject to entry. When, therefore, he issues a grant of lands which are not subject to entry, the grant is void in a court of law because he has exceeded the authority delegated to him, and his act has no more validity than that of any private citizen. Strother v. Cathey, supra.
This being so, it would seem exceedingly plain that no court ought to compel him to perform such an unauthorized act where the want of authority appears upon the face of the claimant's papers.
3. The application of these principles to the case before us is free from difficulty.
Excluding from our view, for the foregoing reasons, the communication of Mr. Bond and its accompanying exhibits, and looking only at the papers of the claimant, we find, upon an examination of entry No. 39, that the land described is covered by navigable water and in front of an incorporated town. Such land is not the subject of entry except under the conditions prescribed in The Code, sec. 2751 (subsection 1), one of which is that "the town corporation shall regulate the line on deep water to which entries may be made." It seems to be (737) conceded (and we think very properly) that until the town authorities have acted, the land is not the subject of entry. The language of the statute clearly implies this, and there are obvious reasons why it should be so. If, as suggested, the town authorities refuse to act, the courts may compel them to discharge their duty in this respect, and in no event can our construction result in one party's getting an undue priority over the other by any possible collusion with the town authorities, since only one person (the owner of the adjacent land) has a right to make such an entry.
It affirmatively appearing, then, that the land is covered by water in front of an incorporated town, and such land not being subject to entry until the town authorities have acted, and this not being shown, we are of the opinion that the Secretary of State had a right to decline issuing a grant for the same.
As to entry No. 38, we think it sufficiently appears from the face of the papers presented by the claimant that the town authorities had designated the line on deep water to which the entry could be made, and that the boundaries indicated are in conformity therewith. We conclude, therefore, that as to this entry a grant should be issued by the Secretary. *Page 514 
It has been suggested that, although upon the face of the papers the claimant has a right to have a grant issued, and although the Secretary cannot consider the communication of Mr. Bond and its exhibits, still, the court being possessed of this information, we should not require the defendant to do a vain thing. To this it may be answered that the court cannot act upon such information, as it may be incorrect or susceptible of explanation, and the claimant ought not to be precluded in this "shorthand" way of asserting his alleged rights in "a due and orderly course of procedure."
The judgment must be modified to conform to this opinion.