DEVIN, J., concurring.
Criminal prosecution under a warrant in which the defendant is charged with the violation of ch. 52, Public Laws 1931, as amended by ch. 57, Public Laws 1935, as amended by ch. 224, Public Laws 1939, relating to the licensing of plumbing and heating contractors.
The warrant charges that the defendant "did unlawfully and willfully engage in the business of plumbing contracting by installing for a valuable consideration, 2 sinks and one closet in the plumbing system of a building at 191 Chestnut Street, in the city of Asheville, county of *Page 245 
Buncombe, without having been licensed to engage in such business in violation of the statute above cited."
There was a special verdict as follows:
"The jury, after being duly sworn and regularly impaneled to try the issues joined in the above entitled cause and after hearing the evidence presented and the charge of the court, returns into court a special verdict finding the following facts beyond a reasonable doubt:
"That the defendant did on or about August 3, 1939, install 2 sinks and 1 closet in a habitable building, located at 191 Chestnut Street, in the city of Asheville, for Roy Koon and did connect said sinks and closet to the plumbing system of said building.
"That the defendant did receive a valuable consideration from Roy Koon for installing and connecting to the plumbing system said two sinks and one closet, in a habitable building located at 191 Chestnut Street, in the city of Asheville.
"That the defendant, on or about August 3, 1939, was not an employee working under the supervision and jurisdiction of a person, firm or corporation holding a license in accordance with the provisions of chapter 52 of the Public Laws of 1931, as amended.
"That the defendant has not applied for nor procured a license from the State Board of Examiners of Plumbing and Heating Contractors before installing said two sinks and one closet and connecting same to the plumbing system in a building located at 191 Chestnut Street, in the city of Asheville, and at the time of said installation was not licensed by said board. That the city of Asheville is a city having a population of more than 3,500.
"That the defendant at the time of said installations was duly licensed by the governing body of the city of Asheville as a `journeyman plumber' under the provisions of its ordinances.
"That the defendant does not have of maintain, and did not at the time hereinbefore referred to, have or maintain, any shop, office or fixed place of business, or have, own, sell or offer for sale, any plumbing or heating supplies, material or fixtures whatsoever, except the defendant owned and used at the time of the said installation necessary tools to perform the labor in connection with the said installation.
"That the defendant received a valuable consideration of seventy-five (75) cents per hour for services rendered in connection with said installation of plumbing.
"Upon the foregoing findings of fact, if the court shall be of the opinion that the defendant is guilty, of engaging in the business of plumbing contracting in violation of the provisions of chapter 52 of the Public Laws of 1931, as amended, we, the jury, find him guilty, and if, upon the foregoing findings of facts, the court shall be of the opinion that the defendant is not guilty, we find him not guilty." *Page 246 
The court, being of opinion that upon the facts found in the special verdict, the defendant is guilty of practicing or offering to practice, entering into or carrying on the plumbing and/or heating contracting business, pronounced judgment upon the verdict. The defendant excepted and appealed.
The defendant presents the following question for determination:
"Is a journeyman plumber, duly licensed under the ordinances of a municipality, who furnishes no materials, supplies, or fixtures, but merely works at his trade as a plumber for an hourly wage, engaged in carrying on the business of plumbing and heating contracting, within the provisions of chapter 52 of the Public Laws of 1931, as amended by chapter 224, Public Laws 1939?"
He likewise challenges the constitutionality of the law under which he stands indicted for that it is contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States and of Art. I, secs. 1, 7, 17 and 31, of the Constitution of North Carolina.
If the answer to the first question presented is "no," the constitutionality of the act becomes immaterial and requires no discussion.
The original act creating the "State Board of Examiners of Plumbing and Heating Contractors," ch. 52, Public Laws 1931, did not undertake to define "plumbing and heating contracting business"; nor did it prescribe the standard of efficiency to be required of an applicant for license by the Board of Examiners. The amendment which is material in consideration of the question presented on this appeal, ch. 224, Public Laws 1939, undertakes to remedy these defects in the original act.
The purpose of the act as declared in the caption is the same: "Relating to the licensing of plumbing and heating contractors." For the purpose of the act "plumbing shall be deemed and held to include the plumbing system of a building consisting of water supply distributing pipes, the fixtures and fixture traps, soil, waste and vent pipes, all with their devices, appurtenances and connections, and all within, adjacent to or connected with the building, however shall not include the repair or installation of water supply pipe from the street to plumbing fixtures not connected with the sewerage or ventilating systems or to the repair or replacement of outside water faucets." Heating "shall be deemed and held to include all heating systems of a building requiring the use of high or low pressure steam, vapor, hot water, warm or conditioned air *Page 247 
and all piping, ducts, connections, or mechanical equipment appurtenant thereto within, adjacent to or connected with the building."
In considering the licensing of an applicant the board is required to give an examination "designed to ascertain the technical and practical knowledge of the applicant concerning the analysis of plans and specifications, estimating costs, construction, fundamentals of design and installation, sanitation, fire hazards, and related subjects." All applicants who, upon such examination, are found by the board "to be qualified to engage in and carry on the business of either plumbing or heating contracting, or both, as defined in this Act, shall be entitled to and shall receive a license to do so."
Section 6 of the amendatory act then provides that: "Any person, firm or corporation who shall engage in or offer to engage in or carry on the business of either plumbing or heating contracting as defined in section six of this Act, without first having been licensed to engage in such business, or businesses, as required by the provisions of this act; . . . shall be guilty of a misdemeanor."
"Plumbing" is defined in terms of the "plumbing system" of a building. The clause "consisting of," etc., immediately following is an adjective phrase which qualifies and defines "plumbing system" and not "plumbing." The adjective phrase merely lists the numerous items and integral parts of such a system. Contrary to the implications of the argument advanced by the State the modifying phrase does not extend the meaning of the words "system" and "systems" but merely clarifies the idea-content of such words by giving an inventory of the units in each case constituting such a "system." By the terms of the act itself the act extends only to those contractors who contract to install or restore entire plumbing systems and heating systems for buildings or to make substantial alterations thereof. This seems to be the meaning and clear intent of the language.
That this was the legislative intent is emphasized by other language in the Act.
The meaning of the term "contractor" is not defined by the Act and, accordingly, we must give to it the normal and ordinary meaning assigned to the word. Although the term "contractor," in a strict sense, may be applied to anyone entering upon a contract, it is commonly reserved to designate one who for a fixed price undertakes to procure the performance of work on a large scale, or the furnishing of goods in large quantities for the public or a company, or individual. (McCarthy v. Second Parish, 71 Me. 318, 36 Am. Rep., 320; Brown v. Trust Co., 174 Pa., 443, 34 A. 335;Koppe Steinichen v. Rylander, 29 Ga. App. 41, 114 S.E. 81, 83.)
As the performance of work "on a large scale" is one of the essential elements of the meaning of the word "contracts," a definition of the *Page 248 
term tends to show that the act was intended to apply to persons who for a fixed price undertake to provide plumbing and heating systems for entire buildings.
The caption declares the purpose of the act to be the licensing and regulation of plumbing and heating contractors. Plumbing is made to relate to the plumbing system. The examination is designed to ascertain the technical and practical knowledge on the part of one who engages in the business of installing plumbing systems. As there are no provisions for the issuance of a limited license to engage in the plumbing contracting business only (while there is such a provision as to the heating contracting business) the applicant seeking a license to engage in the plumbing business must have technical and practical knowledge both of plumbing systems and of heating systems. The licensed contractors when associated with a non-licensed contractor or when employing assistants, is required to execute contracts, exercise general supervision over the work done and be responsible for compliance with all of the provisions of the act. He is required to possess technical and practical knowledge concerning analysis of plans and specifications, estimating costs, construction, fundamentals of design and installation, sanitation, fire hazards and relating subjects.
There are qualifications, terms and conditions which we would naturally expect to be required of one who is in the contracting business, installing and making substantial alterations in plumbing systems. While, on the other hand, they are stipulations which when applied to an ordinary journeyman plumber who simply replaces a fixture in a plumbing system already installed would seem to be arbitrary and unreasonable. The analysis of plans and specifications, the estimation of costs, the fundamentals of design and installation and the like are scarcely matters essential to the familiar and effective use of the pipe wrench and "plumber's friend." When we summons the overalled plumber to repair a bursted pipe or to replace a defective fixture or to adjust a leaking faucet, we neither demand or expect that he be an authority on engineering, costs accounting, architecture, sanitation or fire prevention.
It is a matter of common knowledge that the plumbing system is "ruffed in" in accord with plans and specifications while the building is being constructed. The water supply distributing pipes and the soil, waste and vent pipes, together with their devices, appurtenances and connections are already provided. The attachment of fixtures is merely incidental and does not and cannot interfere with the general plan of the system. It merely has to be attached to the wall and connected to the water supply pipe and the outlet pipe which are already in a fixed position. The work in connection therewith cannot disarrange or alter the original plan. *Page 249 
So long as the entire unit system was planned and its original installation supervised by an experienced plumbing contractor, in the absence of proof that the later modification or adjustment materially altered or affected the effectiveness or sanitation of the system as a whole, there can be little, if any, justification for invoking the extraordinary force of the police power and its Siamese-twin, the criminal authority of the State, against a skilled practical workman seeking to earn an honest livelihood in the only trade which he has mastered. We may not give to an act of the Legislature a meaning which would be so restrictive of personal liberty unless the language thereof is clear and explicit and it permits of no other reasonable interpretation.
While the trade of plumbing contractor, which actively and directly affects the public health and safety, may, perhaps, invoke the aid of the police power to establish a better regulated and more satisfactorily conducted business, to extend the terms of the act to include those who make incidental repairs and replacements and whose necessary qualifications consist more largely of skill of the hands rather than of technical training of the mind, would cast in serious doubt the constitutionality of the act as an unwarranted use of the police power.
But the State contends that the general definition of plumbing is materially qualified by the use of the following language: "Any person, firm or corporation, who, for a valuable consideration installs, alters or restores or offers to install, alter or restore . . . plumbing . . . as defined in this act, shall be deemed to be engaged in the business of . . . plumbing contracting." It contends that this language brings a journeyman plumber within the meaning of the act and expressly condemns the conduct of the defendant as violative of the statute.
In considering this contention we must bear in mind that plumbing, as defined in the act, is the plumbing system. Accordingly, one who originally installs or substantially alters or restores or replaces a plumbing system comes within the terms of the act. One who makes repairs to a system which amounts to a substantial and material alteration in the original plan or in the plans and specifications under which it was installed or a material alteration of an old installation or the restoration of the same, is covered by its terms. However, the terms of the statute do not extend it to cover every workman who makes a minor repair, every mechanic who makes a slight adjustment or every craftsman who makes a single unit installation in respect to an already installed or already planned system which in no wise changes or disrupts the plans and specifications of the original system.
In the findings of the jury in its special verdict there is no finding or suggestion that the defendant installed, altered or restored a plumbing system. *Page 250 
But let us concede that the language used in defining plumbing is ambiguous and that, as contended by the State, the term not only includes the plumbing system as such but likewise may be interpreted so as to embrace the constituent parts thereof separately and distinctly from the system as a whole. Then we are faced by well recognized and firmly established rules of construction which preclude the adoption of this interpretation.
It is a criminal statute, penal in its nature, and must be strictly construed against the State and in favor of the defendant. S. v. R. R.,168 N.C. 103, 82 S.E. 963; Nance v. R. R., 149 N.C. 366; S. v. Williams,172 N.C. 973, 90 S.E. 905; S. v. Humphries, 210 N.C. 406,186 S.E. 473; S. v. Heath, 199 N.C. 135, 153 S.E. 855; S. v. Whitehurst,212 N.C. 300, 193 S.E. 657.
If a statute contains a patent ambiguity and admits of two reasonable and contradictory constructions, that which operates in favor of a party accused under its provisions is to be preferred. Weirich v. State,140 Wis. 98, 22 L.R.A. (N.S.), 1221. Where there is any well-founded doubt as to any act being a public offense it should not be declared such but should rather be construed in favor of the liberty of the citizen.Harrison v. Vose, 13 U.S. Law Ed., 179; Huntsworth v. Tanner, 15 P. 523, Ann. Cases, 1917 D, 676, 25 R. C. L., 1084.
"That penal statutes must be construed strictly is a fundamental rule. The forbidden act must come clearly within the prohibition of the statute for the scope of a penal statute will not ordinarily be enlarged by construction to take in offenses not clearly described; and any doubt on this point will be resolved in favor of the defendant." S. v. Health,supra; S. v. Kearney, 8 N.C. 53; Smithwick v. Williams, 30 N.C. 268;Hines v. R. R., 95 N.C. 434; Cox v. R. R., 148 N.C. 459.
A statute passed in the exercise of the police power of the State should be strictly construed. State ex rel. Wooldridge, 161 N.W. 569, L.R.A., 1917 D, 310; People v. Marx, 99 N.Y. 377, 52 Am. Rep., 34, 2 N.E. 29.
Whenever the police power is invoked there is a resulting delimitation of personal liberty. Such legislation is justified only on the theory that the social interest is paramount. Salus populi est suprema lex. Therefore, in the interpretation of a statute which is ambiguous in its terms and is subject to two or more reasonable interpretations, the Court must adopt that construction which is favorable to the individual and tends least to interfere with or to circumscribe or delimit personal liberty. Asbury v.Albemarle, 162 N.C. 247, 78 S.E. 146; S. v. Biggs, 133 N.C. 729;Price v. Edwards, 178 N.C. 493, 101 S.E. 33; Jennette v. Coppersmith,176 N.C. 82, 97 S.E. 54. Nowhere in the act is any reference made, either directly or indirectly, to a journeyman plumber *Page 251 
except that employees who work under the supervision and jurisdiction of a licensed contractor are excluded from the provisions of the act requiring a license. Nor are incidental repairs which do not alter a system already installed prohibited by one other than a licensed contractor. We find no language in the amended act which renders S. v. Ingle, 214 N.C. 276,199 S.E. 10, obsolete.
The appellee in its brief states that "the General Assembly of 1939 was hostile to legislation of this kind, as evidenced by their abolishing certain boards set up for certain trades and by limiting the powers previously granted to others." Perhaps this is the reason the Legislature failed to use language which directly or by necessary implication includes journeyman plumbers not employed and working under the supervision of licensed contractors. If it had desired so to do it was a simple undertaking. Slight changes in and additions to the language of the statute would have included them within the terms thereof.
The court below, on the special verdict, adjudged that the defendant is guilty "of practicing or offering to practice, entering into or carrying on the plumbing and/or heating contracting business." Of what crime does he stand convicted? S. v. Ingle, supra.
The judgment below is
Reversed.
DEVIN, J., concurring.